**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

CHRISTINA PIERSON,                           :

                                                                Case No. 3:10-cv-219

              Plaintiff,

                                                District Judge Walter Herbert Rice
                                                Magistrate Judge Michael R. Merz

   -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

              Defendant.               :

**REPORT AND RECOMMENDATIONS**

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v.*

*Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986).  Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988);  *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole.  *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978);  *Houston v. Secretary of Health and Human Services*, 736 F.2d 365  (6th Cir. 1984);  *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984).  However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.  *Garner, supra.*  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion.  *Elkins v. Secretary of Health and Human Services*, 658 F.2d  437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an

application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the

Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD on September 16, 2002, alleging disability from August 11, 2002. (Tr. 75). The Commissioner denied Plaintiff's application at the initial level of the administrative process, (Tr. 59), and Plaintiff took no further appeal.

Plaintiff filed applications for SSD and SSI on September 15, 2004, alleging disability from August 11, 2002, due to back, neck, and foot impairments. (Tr. 69-71; 696-98). The Commissioner denied Plaintiff's applications at the initial and reconsideration levels. (Tr. 52, 56, 689, 693). Administrative Law Judge Melvin Padilla held a hearing, (Tr. 699-734), following which he determined Plaintiff is not disabled. (Tr. 12-33). The Appeals Council denied Plaintiff's request for review, (Tr. 5-7), and Judge Padilla's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Padilla found that Plaintiff met the insured status requirements of the Act through June 30, 2004. (Tr. 20, ¶ 1). Judge Padilla then found that Plaintiff has severe bipolar disorder and headaches probably due to medication overuse, but that she does not have an impairment or combination of impairments that meets or equals the Listings. *Id.*, ¶ 3; Tr. 25, ¶ 4. Judge Padilla found further that Plaintiff has the residual functional capacity to perform a limited range of light work. (Tr. 26, ¶ 5). Judge Padilla then used sections 202.20 through 202.22 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 32, ¶ 10). Judge Padilla found that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 33).

In her Statement of Errors, Plaintiff challenges the Commissioner's findings with

respect to her alleged mental impairment and headaches. (Doc. 5). Accordingly, the Court will focus its review of the evidence on that which relates to those impairments.

The record contains Plaintiff's treatment notes from Advanced Therapeutic Services dated September 28, 2006, through September 1, 2007, where she received mental health treatment from Dr. Gollamudi, a psychiatrist, and Ms. Schultz, a counselor. (Tr. 467-520; 558-62; 619-40; 680-88). Those notes reveal that when Plaintiff was first evaluated at Advanced Therapeutics, it was noted that Plaintiff's treating physician had identified Plaintiff's diagnosis as bipolar disorder and had prescribed medications, her speech was normal, her mood was depressed, and her thought processes were normal. *Id.* It was also noted that Plaintiff's insight and judgment were fair and intact, that she reported a history of three suicide attempts, and that she was alert and oriented. *Id.* Plaintiff's diagnosis was identified as bipolar disorder, mixed and severe without psychotic features and she was assigned a GAF of 50. *Id.*

Ms. Schultz reported on May 11, 2005, that Plaintiff was depressed, fluctuated between psychomotor agitation and retardation, had very poor concentration and memory, and that she felt confused all the time. *Id.* Ms. Schultz also reported that Plaintiff had started to respond to treatment until she became pregnant and had to reduce her medications and that her diagnosis was bipolar disorder, mixed, severe, with psychotic symptoms. *Id.*

On April 17, 2007, Dr. Gollamudi reported that Plaintiff had fair to poor abilities to make occupational and performance adjustments and good to fair to poor abilities to make personal adjustments, that she had mood swings and poor concentration, and that she had moderate restrictions of daily living, marked difficulties in maintaining social functioning, marked deficiencies of concentration, and repeated episodes of decompensation. (Tr. 619-29).

Examining psychologist Dr. Harris reported on May 14, 2007, that Plaintiff graduated from high school, started studying at Carousel Beauty College and almost graduated but quit due to her back and her inability to get along with others, that she started receiving mental health treatment about two to three years ago, saw a psychiatrist monthly and a therapist twice a month, and that her speech was somewhat hesitant. (Tr. 602-04). Dr. Harris also reported that Plaintiff's mood was depressed and her psychomotor activity was normal. *Id.* Dr. Harris identified Plaintiff's diagnosis as bipolar disorder NOS (by history), and he assigned her a GAF of 45. *Id.* Dr. Harris opined that Plaintiff's ability to understand instructions appeared to be unimpaired, her ability to maintain attention to perform simple multi-step repetitive tasks was moderately impaired, her ability to relate to others was moderately impaired, and that her ability to withstand the stress and pressure associated with day-to-day work activities was moderately impaired. *Id.*

The record contains a copy of treating physician Dr. Mullennix' office notes dated January 6, 2002, through July 30, 3007. (Tr. 330-465; 563-82; 641-47; 651-65). Those records reveal that Dr. Mullennix treated Plaintiff for various medical conditions including migraine headaches, depression/anxiety, chronic lumbar pain, and pregnancy. *Id.* On November 15, 2004, Dr. Mullennix noted that Plaintiff reported a history of migraine headaches which had increased in intensity and that Plaintiff had exhibited some MRI changes. *Id.* Dr. Mullennix also reported that due to her pregnancy, currently Plaintiff was not taking any medications except Phenergan and Tylenol 3, that her migraines were resistant to all typical migraine medications, that she had severe migraines with nausea and vomiting and photo/phonophobia three to five times a week, and that she was unable to perform any activity when she had a headache. *Id.*

The record contains a copy of Plaintiff's treatment notes from the Cleveland Clinic

dated June 24 through July 8, 2004. (Tr. 205-17). Those notes reveal that Plaintiff consulted with neurologist Dr. Stillman on June 24, 2004, who noted that Plaintiff reported that she had a headache onset about one year ago, that initially the headache occurred once per month but recently had increased to one per week, and that she had a constant background headache. (Tr. 213-17). Dr. Stillman also noted that Plaintiff complained that with the headache she had photo/phonophobia, dizziness and lightheadedness, blurry vision, and trouble maintaining her balance. *Id.* Dr. Stillman reported that Plaintiff's physical examination was normal and he identified her diagnosis as migraine headache. *Id.* Subsequently, Dr. Stillman reviewed an MRI of Plaintiff's brain which was performed in March, 2004, and which revealed multiple subcortical and deep white matter punctate hyperintensities. *Id.*; *see,* Tr. 201. Plaintiff participated in an intensive treatment regimen to wean her off medications she had been taking and to start her on new medications. *Id.*

After reviewing the record, a medical advisor (MA) testified at the hearing that Plaintiff does not meet or equal the Listings, had been receiving standard mental health care and not intensive care, had a number of significant psycho/social stressors, and that she takes a number of medications. (Tr. 721-30). The MA also testified that Plaintiff was mildly to moderately limited in her abilities to perform work-related activities. *Id.*

Plaintiff alleges in her Statement of Errors that the Commissioner erred by failing to find that she satisfies Listing 12.04, by failing to give treating psychiatrist Dr. Gollamudi's opinion controlling weight, and by failing to find that her migraine headaches are disabling. (Doc. 5).

A claimant has the burden of proving that his or her impairments meet or equal the Listings. *Bowen v. Yuckert,* 482 U.S. 319 (1987). In order to meet the requirements of a listed impairment, the claimant must meet all of the elements of the listed impairment. *See, Hale v.*

7

*Secretary of Health and Human Services,* 816 F.2d 1078, 1083 (6th Cir. 1987), *citing, King v. Heckler,* 742 F.2d 968, 973 (6th Cir. 1984) (lack of evidence indicating the existence of all the requirements of Listing 1.05C provides substantial evidence to support the Secretary's finding that claimant did not meet the Listing). It is not sufficient to come close to meeting the requirements of a Listing. *Dorton v. Heckler,* 789 F.2d 363, 367 (6th Cir. 1989) (Secretary's decision affirmed where medical evidence almost establishes a disability under Listing 4.04(D)).

In determining that Plaintiff does not satisfy the Listings, Judge Padilla relied primarily on the MA's testimony. (Tr. 26). Because the Commissioner had an adequate basis to reject Dr. Gollamudi's opinion, *see, infra,* the Commissioner did not err by relying on the MA's opinion. Specifically, as the MA noted, the record establishes that Plaintiff has received mental health care and certainly not intensive care. The notes from Advanced Therapeutics reveal that Plaintiff receives treatment from Dr. Gollamudi on a monthly basis and sees her therapist twice a month. In addition, Plaintiff has never required hospitalization for treatment of her mental impairment. Further, the record reveals that Plaintiff engages in a variety of activities including caring for her children, attending church, watching television, cleaning the house, cooking, shopping, doing laundry, paying her bills, writing poetry, and driving. *See,* Tr. 603.

In addition to the MA's testimony, the opinion of examining psychologist Dr. Harris who determined that Plaintiff is, at most, moderately impaired in her abilities to perform work-related activities and the reviewing mental health experts' opinions. *See,* Tr. 242-59.

Plaintiff argues that the MA failed to consider the "B" criteria in opining that Plaintiff does not satisfy the Listing and therefore the Commissioner erred by relying on her opinion. However, even assuming *arguendo* that the MA failed to consider the "B" criteria, the question of

whether an individual satisfies the Listings and is therefore disabled is reserved to the Commissioner. Additionally, the reviewing mental health experts opined that Plaintiff does not satisfy the "B" criteria. (Tr. 256).

Plaintiff argues next that the Commissioner erred by failing to give controlling weight to Dr. Gollamudi's opinion.

"In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards." *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009). "One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations."

*Id.*, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), *quoting,* 20 C.F.R. § 404.1527(d)(2).

"The ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley,* 581 F.3d at 406*, quoting, Wilson,* 378 F.3d at 544*.* "On the other hand, a Social Security Ruling[1] explains that '[i]t is an error to give an opinion controlling weight simply because it is the

---

FN 1. Although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders

9

opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). "If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 582 F.3d at 406, *citing, Wilson,* 378 F.3d at 544, *citing* 20 C.F.R. § 404.1527(d)(2).

"Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Blakley,* 581 F.3d at 406, *citing,* 20 C.F.R. §404.1527(d)(2). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley,* 581 F.3d at 406-07,*citing,* Soc.Sec.Rule 96-2p, 1996 WL 374188 at *5. "The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."

---

and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

*Blakley,* 581 F.3d at 407*, citing, Wilson,* 378 F.3d at 544. "Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record.'" *Blakley, supra, quoting, Rogers v. Commissioner of Social Security.,* 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

In rejecting Dr. Gollamudi's opinion, Judge Padilla essentially found that it was not supported by objective findings in the record and was inconsistent with the other evidence of record. (Tr. 28-29).

Although Dr. Gollamudi essentially opined that Plaintiff is not able to perform substantial gainful activity due to her bipolar disorder, the treatment notes from Advanced Therapeutics do not support his opinion. For example, as noted above, Plaintiff received treatment from Dr. Gollamudi only once a month and from her therapist every two weeks. In addition, the records reveals that Plaintiff never required intensive mental health treatment such as hospitalization. Moreover, Dr. Gallamudi consistently reported that Plaintiff exhibited no abnormal findings on mental status exam. Dr. Gallamudi's opinion is also inconsistent with Dr. Harris' findings and opinion, the MA's opinion, and the reviewing psychologists' opinions. Finally, Dr. Gallamudi's opinion is inconsistent with Plaintiff's reported activities.

Plaintiff alleges next that the Commissioner erred by failing to find that her migraine headaches are disabling. Essentially, Plaintiff argues that the Commissioner erred by failing to give controlling weight to Dr. Mullennix' opinion about her inability to function with a headache.

11

However, Plaintiff does not argue that the Commissioner improperly rejected Dr. Mullennix' opinion as a whole.

As with Dr. Gollamudi's opinion, Judge Padilla rejected Dr. Mullennix' opinion because it is not supported by the objective evidence and is inconsistent with other evidence of record. (Tr. 28-29).

A review of Dr. Mullennix' office notes reveals that they contain few, if any, objective findings with respect to Plaintiff's alleged migraine headaches. Indeed, Dr. Mullennix' notes are primarily recitations of Plaintiff's subjective allegations and complaints as to her headaches. In contrast to Dr. Mullennix' opinion, as noted above, Plaintiff engages in a wide range of activities. Under these facts, the Commissioner did not err by rejecting Dr. Mullennix' opinion.

Plaintiff also argues that the Commissioner erred by failing to rely on the VE's opinion that someone who suffers with headaches of the frequency and duration that Plaintiff experiences is precluded from performing full-time work. However, because the Commissioner had an adequate basis for rejecting Plaintiff's allegations, a finding Plaintiff does not challenge, he was not required to include those allegations in his hypothetical question to the VE. *See, Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1235 (6th Cir. 1993).

The Court's duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v.*

*Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

March 21, 2011.

*s/ Michael R. Merz*
United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).